IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARK C. HEALY as assignee for PSM HOLDINGS, INC., PRIME SOURCE MORTGAGE, INC., and WWYH, INC., | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-21-750-C |
| | ) | |
| CITIZENS STATE BANK, | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JEFFREY SMITH, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff is the assignee for the benefit of creditors with respect to PSM Holdings, Inc. ("PSM Holding"), Prime Source Mortgage, Inc. ("Prime Source"), and WWYH, Inc. Plaintiff filed the present action seeking to recover funds in a deposit account held by Defendant Citizen's State Bank ("Citizens"). Plaintiff attempted to recover the funds from Citizens. Citizens rejected the request and argues it is entitled to the funds to resolve a debt allegedly owed to its subsidiary American Southwest Mortgage Funding Corp. ("ASMFC"). Plaintiff then brought the present claims against Defendant for breach of contract and fraudulent transfer. Citizens filed a Counterclaim raising a claim for breach of contract.

## FACTS

The following facts are undisputed:  PSM Holdings, Prime Source, and WWYH ("Assignors") provided mortgage brokerage services by originating mortgage loans funded by third parties.  PSM Holdings operated through its subsidiaries Prime Source and WWYH.  Certain states required these entities to obtain a bond prior to doing business in the state.  To that end, Assignors obtained from Defendant a Line of Credit ("LOC") in the amount of $232,500.00.  Assignors also maintained a deposit account (7994 account) with Citizens in the amount of $232,500.00, as collateral for the LOC.  On March 9, 2018, Citizens notified the bond carrier that the LOC would be terminated effective April 24, 2018.  Indeed, on April 24, 2018, the LOC was released and Citizens' security interest in the collateral was relinquished.  On that same date, Prime Source withdrew all funds from the 7994 account and redeposited them in a new account ("1426").  On August 3, 2018, Healy and Prime Source executed an assignment and on August 13, 2018, Assignors filed a Petition for the Assignment for the Benefit of Creditors ("ABC cases") in Florida.  As part of the assignment, Healy was granted all right, title, and interest in the assets of Prime Source.  On the date of the assignment, the 1426 account had a balance of at least $232,685.84.  On August 28, 2020, the Florida court ordered all banks including Citizens to transmit all proceeds of collateral for the bonds to Healy.  Citizens was not a party to the Florida litigation.  Citizens has refused to release the funds held and as noted above asserts it is entitled to the funds to satisfy a debt owed by ASMFC.

As noted above, ASMFC is a wholly-owned subsidiary of Citizens.  In October of 2013, Prime Source and ASMFC entered into an agreement where ASMFC would provide warehouse lending to Prime Source.  Prime Source then used those funds to make mortgage loans.  At some point, two of the loans issued by Prime were paid in full.  However, contrary to their agreement, Prime Source did not pay those funds to ASMFC.  The loans then became "out of trust loans."  These out of trust loans put Prime Source's status as a HUD-approved lender at risk.  To address this issue, on February 10, 2017, Prime Source, PSM Holdings, and ASMFC entered into a series of transactions that assigned debts from Prime Source to PSM Holdings and granted stock in PSM Holdings to ASMFC.  Citizens disputes that ASMFC's signatory on this agreement had the authority to sign the agreement.  In paragraph 3 of the agreement, ASMFC released and discharged Prime Source from all obligations related to the out of trust loans.  Citizens argues this release was ineffective because the ASMFC signor did not have authority and because the release would have violated the agreement between Citizens and ASMFC.

On October 8, 2019, ASMFC and Citizens entered into an agreement wherein ASMFC assigned the Prime Source note to Citizens.  This agreement stated the debt owed to ASMFC by Prime Source was $233,025.73 and was comprised solely of amounts of the out of trust loans.  Citizens then withdrew $233,025.73 from the 1426 account.  In its Motion for Summary Judgment, Citizens also makes a claim for loans sold at a loss.  These

"loss loans' are loans which were made by Prime Source and then sold for an amount less than the amount owed to ASMFC.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth specific facts outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves. Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). The burden is not an onerous one for the nonmoving party in each case but does not at any point shift from the nonmovant to the district court. Adler v.

4

Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998).  All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## ANALYSIS

Plaintiff requests the Court to enter a declaratory judgment that effective on August 3, 2018, he became the owner of the savings account.  According to Plaintiff, his right to ownership arises from the assignment by Prime Source and/or by operation of Florida's statutes.  Plaintiff argues that comity requires the Court to recognize and validate the Orders of the Florida court in the ABC cases.  Citizens does not appear to contest that the ABC cases granted Plaintiff the assets of Prime Source and PSM Holdings.  Indeed, Citizens argues that Plaintiff now holds the assets and the liabilities of the ABC cases.  Thus, it is undisputed that Plaintiff, by virtue of the ABC cases, took ownership of the assets and liabilities of Prime Source and PSM Holdings.  However, this determination does not end the matter.  Rather, the question then becomes whether Plaintiff, by standing in the shoes of Prime Source/PSM Holdings, was entitled to the funds in the account.  Additionally, Citizens, in its counter-motion for summary judgment, argues that Plaintiff's assumption of the liabilities plays a role in determining who is entitled to what money.

Plaintiff argues that he is entitled to summary judgment on his claims for breach of contract.  Plaintiff argues that Prime Source's deposit of cash with Citizens created a contract.  Citizens' refusal to deliver those funds on demand amounted to a breach of that

5

contract.  Plaintiff argues he has suffered damages as a result of the breach and therefore has established the elements for a breach of contract claim.  Citizens does not argue a contract did not exist but argues that it was entitled to a set-off or that another basis existed to allow it to retain the funds in the account.

Resolution of this dispute requires a determination of the effect, if any, of the agreement between PSM Holdings, Prime Source, and ASMFC to address the out of trust loans.  As set forth in the undisputed facts, these parties entered into the Assignment of Debt Agreement ("Debt Assignment") and the terms of the Debt Assignment released Prime Source from any obligation for the out of trust loans.  From that point, only PSM Holdings remained indebted to ASMFC for the out of trust loans.  Citizens disputes the validity of this agreement by arguing the person signing on behalf of ASMFC, Carrington, lacked the authority to make the agreement.

Plaintiff argues Carrington did in fact have actual or apparent authority to execute the agreement.  It is undisputed that Carrington was the executive director of ASMFC when he signed the Debt Assignment.  Thus, as Plaintiff argues, he had at least apparent authority to bind ASMFC.  See Townsend v. Daniel, Mann, Johnson and Mendenhall, 196 F.3d 1140, 1146 (10th Cir. 1999).  Plaintiff also offers arguments based on agreements between ASMFC and Citizens in support of Carrington's authority.  However, the Court finds his status as executive director sufficient to impose apparent authority to enter the agreement.  Citizens counters, arguing that because Carrington owned stock in PSM Holdings this

6

conflict put Prime Source and PSM Holdings on notice to inquire into the scope of Carrington's actual authority.  However, the case law Citizens relies on for this proposition is inapposite.  Before any interest of Carrington is sufficient to offset his apparent authority, there must be evidence the debt assignment was not fair to ASMFC at the time it was entered.  See 18 Okla. Stat. § 1030.  Citizens offers no such evidence.  Rather, Citizens argues the mere fact that Carrington owned PSM stock renders the contract void.  For the reasons set forth above, Citizens' argument fails.

Citizens argues that in the event the Court finds the Debt Assignment is effective, it should also find that Prime Source later reaffirmed the debt owed to ASMFC.  In support of its argument, Citizens offers a declaration from Carrington and email exchanges between Carrington and Crystal Chavez, who identified herself as a Vice President of Branch Services for "Prime Source Mortgage, Inc."  Those emails reflect an agreement between Carrington and Chavez to pay on the out of trust loans starting with interest-only payments.  Plaintiff argues the emails only reflect that PSM Holdings was making arrangements to pay on the debt as agreed in the Debt Assignment.  Plaintiff asserts that even if the email exchange between Carrington and Chavez created some new agreement to reaffirm the debt, that agreement is unenforceable because it violates the Statute of Frauds.

The Court finds that the email exchange is insufficient to demonstrate an intent by Prime Source to reaffirm the debt that was transferred to PSM Holdings by the Debt Assignment.  Plaintiff has offered evidence demonstrating that in the email exchange,

7

Chavez was acting on behalf of PSM Holdings, not Prime Source.  Even if the email exchange could be found to bind Prime Source, as Plaintiff notes, any such agreement would violate the Statute of Frauds and be unenforceable.  See 15 Okla. Stat. § 136.  Thus, Prime Source did not reaffirm the debt.

Citizens argues that even if the debt was not reaffirmed the Court may still authorize a set-off.  Citizens asserts that under Plaintiff's arguments he is the assignee for both Prime Source and PSM Holdings and thus Plaintiff is liable for debt under either scenario.  As Plaintiff notes, Citizens' argument ignores what actually happened in the ABC cases.  As noted by Plaintiff, two separate estates were created – the Prime Source estate and the PSM Holdings estate.  While Healy serves as the assignee of each estate, the two are separate estates.  Indeed, the order from the court administering the estates notes that the assets of the two estates are not to be commingled.  Plaintiff argues that to the extent Citizens has a claim against PSM Holdings for the out of trust loans or against Prime Source for the loss loans, those claims must be brought in Florida.  On this point, Plaintiff is in error.  There is no requirement that Citizens proceed in Florida.  The issue of ownership of the funds and the disposition of those funds is properly before this Court and is resolved below.

Alternative to the above set-off argument, Citizens argues it was owed for the loans sold at a loss and so was entitled to keep at least the amount of those loans from the account.  However, as Plaintiff notes, at least three facts bar such a claim.  First, under the terms of the agreements between the parties, Citizens was required to first make a demand for

repayment.  Citizens has offered no proof of any such demand.  Thus, its unilateral act of seizure was improper.   Second, throughout all actions between the parties, Citizens has asserted the seizure was to pay the out of trust loans.  Thus, Citizens is estopped from now asserting a new basis for the seizure.  Finally, even if there was some valid basis for seizure, the amount seized was $233,025.73.  This amount was nearly $100,000.00 more than the amount due for the loss loans.  Citizens' arguments fail.

In light of the above analysis, the undisputed facts demonstrate that as of the date of the creation of the ABC cases, Prime Source was the owner of the funds in the 1426 account.  By virtue of the Debt Assignment, ASMFC released Prime Source from any further obligation for the out of trust loans.  Consequently, Citizens' seizure of the funds in the 1426 account to satisfy any debt owed by Prime Source for the out of trust loans was improper.

Citizens argues that even if the Court finds that it cannot recover from Prime Source and only from PSM Holdings, the result is the same, as the Court should find that Prime Source is the alter ego of PSM Holdings.  In support of this argument, Citizens directs the Court to statements in Plaintiff's briefs where it is asserted that PSM Holdings did not maintain its own financial statements, commingled funds with Prime Source, and did not maintain its own bank account.  The Court directed Plaintiff to file a Surreply to address this argument.  As Plaintiff's Surreply makes clear, Citizens has failed to establish the facts necessary to find PSM Holdings is an alter ego of Prime Source.  Because PSM Holdings

and Prime Source were formed in Delaware, Delaware law sets the standard for alter ego determination.  See Tomlinson v. Combined Underwriters Life Ins. Co., No. 08-CV-259-TCK-FHM, 2009 WL 2601940, at *2 (N.D. Okla. Aug. 21, 2009) (explaining that Oklahoma has routinely followed the Restatement (Second) of Conflict of Laws in other settings and would likely do so when faced with the question of what state's alter ego law to apply.).  Under Delaware law, to find alter ego liability, two elements must be shown, 1) that the corporations did not act as legally distinct entities, and 2) that there is an element of fraud, injustice, or inequity in the use of the corporate form.  Fidelity Nat'l Info. Servs., Inc. v. Plano Encryption Techs., LLC, Civil Action No. 15-777-LPS-CJB, 2016 WL 1650763, at *4 (D. Del. Apr. 25, 2016).  Citizens has failed to demonstrate either element. At best, Citizens has offered evidence that PSM Holdings and Prime Source commingled funds and that PSM Holdings never operated as a distinct entity.  However, under Delaware law, disregarding a corporate entity is a difficult task.  See Wallace ex rel. Cencom Cable Income Partners II, L.P. v. Wood, 752 A.2d 1175, 1183 (Del. Ch. 1999) (citations omitted). Indeed, under Delaware law, "[m]ere dominion and control of the parent over the subsidiary will not support alter ego liability."  Outokumpu Eng'g Enterprises, Inc. v. Kvaerner EnviroPower, Inc., 685 A.2d 724, 729 (Del. Super. Ct. 1996) (citations omitted).

Citizens also fails to offer any evidence demonstrating the corporate forms of PSM Holdings and Prime Source were created or used to perpetuate fraud or some injustice. Indeed, the sum of Citizens' alter ego argument is that PSM Holdings and Prime Source

10

acted in bad faith in executing the Debt Assignment and that the two entities commingled funds. There is no evidence to support a finding of fraud or injustice arising from use of the corporate forms. Thus, under Delaware law, Citizens' quest to disregard the corporate entities of PSM Holdings and Prime Source must fail.

Citizens and Third-Party Defendant Jeffrey Smith have also filed cross Motions for Summary Judgment. This dispute centers on a Guaranty Agreement executed by Smith on October 10, 2013. In that Agreement, Smith guaranteed to ASMFC payment for all liabilities due from Prime Source. Citizens argues this guarantee requires Smith to pay the out of trust loans, the Prime Source loans sold at a loss, and Citizens' attorneys' fees and costs. Smith argues the Guarantee was to serve as consideration for the line of credit issued from ASMFC to Prime Source. According to Smith, once the Assignment of Debt was executed by Prime Source, PSM Holdings, and ASMFC, any obligation under the Guarantee ceased to exist. Smith points to language in the Debt Assignment, noting it applied to any other document relating to or securing the obligation and the obligation itself as that term was used in the line of credit. Thus, Smith argues the Guarantee he executed was released. The Court finds Smith's position supported by the facts and the applicable law. This is so because once the Debt Assignment was entered, Prime Source no longer owed any debt. Citizens' arguments against the Debt Assignment have been rejected elsewhere in this Order. Nothing in the current arguments alters that conclusion. Thus, when the Debt Assignment was executed, the Guarantee from Smith became a nullity.

11

Consequently, Smith was absolved of any future liability to Citizens.  Smith's Motion for Summary Judgment will be granted and Citizens' Motion will be denied.

Plaintiff has demonstrated the undisputed facts entitle him to judgment. Accordingly, his Motion for Summary Judgment will be granted and judgment in favor of Plaintiff in the amount of $233,025.73, plus pre- and post-judgment interest will be entered. Plaintiff's request for attorneys' fees and costs will be addressed as set out in the Federal Rules of Civil Procedure and the Court's Local Rules.  Plaintiff shall, within five days of the date of this Order, advise the Court if it seeks any additional relief from Counts III and IV of the Complaint, or if judgment may be entered in this matter.

## CONCLUSION

As set forth more fully herein, Plaintiff's Motion for Summary Judgment on Counts I and II of Complaint (Dkt. No. 35) is GRANTED.  Defendant Citizen State Bank's Motion for Summary Judgment (Dkt. No. 38) is DENIED.  Third-Party Defendant Jeffrey Smith's Motion for Summary Judgment (Dkt. No. 51) is GRANTED.  Plaintiff's Motion in Limine (Dkt. No, 72) is STRICKEN as moot.  Plaintiff's Motion for Leave to File Supplemental Brief (Dkt. No. 80) is DENIED.  A separate Judgment will enter at the close of these proceedings.

IT IS SO ORDERED this 6th day of July 2022.

ROBIN J. CAUTHRON
United States District Judge

12